UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                  :

EDITH AND CARL MARKS JEWISH COMMUNITY  :
HOUSE OF BENSONHURST, INC., *et al.*,         :
                  :
         Plaintiffs,        :
                  :
        -v-           :       23 Civ. 336 (JPC)
                  :

BERKSHIRE HATHAWAY DIRECT INSURANCE  :     OPINION AND ORDER
COMPANY f/k/a AMERICAN CENTENNIAL     :
INSURANCE COMPANY,           :
                  :
        Defendant.      :
                  :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiffs[1] initiated this action against Defendant Berkshire Hathaway Direct Insurance

Company ("Berkshire Hathaway") in New York State Supreme Court in December 2022.

Berkshire Hathaway removed the case to federal court in January 2023, and following nearly two

years of discovery, the parties moved for summary judgment in December 2024.  But in November

2025, with summary judgment motions fully briefed, one of the Plaintiffs, Jewish Board, informed

the Court that it had not consented to the filing of this action by the attorney who was purporting

---

[1] The Court uses the term "Plaintiffs" to refer collectively to Edith and Carl Marks Jewish Community House of Bensonhurst, Inc. ("Edith and Carl Marks"); Pleasantville Cottage School ("Pleasantville"); Jewish Child Care Association of New York ("JCCANY"); United Jewish Appeal – Federation of Jewish Philanthropies of New York, Inc. ("UJA"); Jewish Child Care Association ("JCCA"); Jewish Board of Family and Children Services, Inc. ("Jewish Board"); The Board of Trustees of The Jewish Board of Family and Children's Services, Inc. ("Board of Trustees"); Shorefront YM-YMHA of Brighton – Manhattan Beach ("Shorefront"); Young Men's and Young Women's Hebrew Association of Williamsburg, Inc. ("Hebrew Association of Williamsburg"); Mosholu-Montefiore Community Center, Inc. ("Mosholu-Montefiore"); Hawthorne Cedar Knolls Residential Treatment Center ("Hawthorne Residential Treatment"); Hawthorne Cedar Knolls Union Free School District ("Hawthorne School District"); and Mid-Island Y Jewish Community Center, Inc. ("Mid-Island Y").

to act on behalf of all Plaintiffs when he initiated this case. Over the next several months, other Plaintiffs leveled similar accusations and the counsel who had purported to represent them moved to withdraw. Eventually, in February 2026, Plaintiffs moved for voluntary dismissal of this case without prejudice so that their claims could be pursued in a pending action in state court. Berkshire Hathaway opposes such a dismissal.

For the reasons explained below, the Court dismisses Plaintiffs' claims without prejudice, subject to certain conditions. In light of that dismissal, the Court denies as moot the pending motions for summary judgment and for withdrawal of Plaintiffs' former counsel.

## I. Background

On December 9, 2022, this action was initiated on behalf of Plaintiffs in New York State Supreme Court, New York County, by Aaron F. Fishbein—an attorney who, at the time, was with the law firm Rubin, Fiorella, Friedman & Mercante LLP. *See* Dkt. 1-1.[2] The lone Defendant, Berkshire Hathaway, removed the case to this District on January 13, 2023, Dkt. 1, and Fishbein entered a notice of appearance to represent Plaintiffs in this Court three days later, Dkt. 12. A few months later, on April 28, 2023, Fishbein filed an Amended Complaint that, in relevant part, alleges that Plaintiffs are nonprofit organizations which have been named as defendants in suits brought under the Child Victims Act ("CVA"), N.Y. C.P.L.R. § 214-g, and seeks a declaratory judgment that, pursuant to a series of insurance agreements, Plaintiffs are entitled to defense costs and indemnification from Berkshire Hathaway in the underlying actions. Dkt. 32. Berkshire

---

[2] In addition to Plaintiffs, the Complaint filed on December 9, 2022, and an Amended Complaint subsequently filed on April 28, 2023, named The Cedar Knolls Foundation Inc. ("Foundation") and The Board of Trustees of The Jewish Board of Family and Children's Services, Inc. ("Board of Trustees") as plaintiffs. The claims of Foundation and Board of Trustees were voluntarily dismissed with prejudice on January 14, 2025, and January 21, 2025, respectively. Dkts. 108, 113.

Hathaway answered the Amended Complaint on May 12, 2023.  Dkt. 34.

On December 11, 2024, after discovery closed, Berkshire Hathaway filed five motions for summary judgment and Plaintiffs, still purportedly represented by Fishbein—who by then was working at the law firm Gallo Vitucci Klar LLP—also filed a motion for summary judgment.  Dkts. 64-88.  Oppositions to the summary judgment motions were filed on February 4 and 5, 2025, Dkts. 114-124, and replies in support of the motions were filed on March 4 and 12, 2025, Dkts. 130-136.

On November 24, 2025, while the summary judgment motions were pending, Lynda Anne Bennett and Jeremy McGuire King of the law firm Lowenstein Sandler LLP entered notices of appearance on behalf of Jewish Board.  Dkts. 140, 141.  Two days later, on November 26, 2025, Jewish Board filed a letter in anticipation of a motion to stay the proceedings.  Dkt. 142.  In its premotion letter, Jewish Board stated that it had neither consented to the filing of this action nor been notified of this suit prior to its commencement.  *Id.* at 2.  Jewish Board also explained that, as currently pleaded, this action does not cover seventeen additional lawsuits filed against it for which Berkshire Hathaway may owe insurance or include forty additional insurance companies that may owe Jewish Board a duty to defend and indemnify.  *Id.*  Jewish Board further advised that it had recently filed "a more comprehensive action" in New York Supreme Court "that seeks all remedies available . . . [for all] lawsuits pending against it and includes all insurers that owe a coverage obligation."  *Id.* (citing *Jewish Bd. of Fam, & Child.'s Servs., Inc. v. Affiliated FM Ins. Co.*, No. 659959/2025 (N.Y. Sup. Ct. N.Y. Cnty.) ("State Court Action")).

Jewish Board's letter prompted a flurry of activity over the weeks that followed.  On December 1, 2025, Berkshire Hathaway conveyed its opposition to Jewish Board's request for a stay, Dkt. 143, and the next day, Fishbein moved to withdraw as counsel for Jewish Board, Dkts. 145-146.  On December 5, 2025, the Court scheduled a conference for December 18, 2025, to

discuss Jewish Board's stay request.  Dkt. 147.  Three days later, on December 8, 2025, Bennett and King entered notices of appearance on behalf of two more Plaintiffs, Shorefront and UJA, Dkts. 148, 149, and those parties promptly joined in Jewish Board's request for a stay, Dkt. 150. In advocating for a stay, UJA and Shorefront explained that the current action concerned coverage for "only a small subset" of the underlying lawsuits filed against them, and informed the Court of an "overlapping" action brought in this District against UJA and Shorefront by certain insurers other than Berkshire Hathaway.  *Id.* at 1 (citing *First State Ins. Co. v. United Jewish Appeal-Fed'n of Jewish Philanthropies of N.Y., Inc.*, No. 25 Civ. 1418 (JGK) (S.D.N.Y.) ("Hartford Action")). On December 12, 2025, Berkshire Hathaway reiterated its opposition to a stay.  Dkt. 152.  Also on December 12, 2025, Fishbein filed a letter disputing Jewish Board's claim that it "did not knowingly retain Gallo Vituicci [sic]."  Dkt. 153 at 2.  Then, on December 17, 2025, an attorney from the law firm Gordon Rees Scully Mansukhani LLP advised the Court that his firm had been retained "to represent the interests of Gallo Vitucci Klar LLP at the conference scheduled for . . . December 18, 2025."  Dkt. 154.

At the December 18 conference, the Court ordered the parties to meet and confer and file a joint status letter by February 2, 2026.  As memorialized in a subsequent Order, the parties' joint letter was to explain "whether any parties seek either a stay of this action or to move to voluntarily dismiss their claims without prejudice."  Dkt. 155.  Over a month later, on January 27, 2026, Fishbein moved to withdraw as counsel for all Plaintiffs.  Dkt. 156.

The parties filed that joint letter on February 2, 2026.  Dkt. 161.  In it, Lowenstein Sandler reported that the firm was now also representing six more Plaintiffs—Edith and Carl Marks, Hawthorne School District, JCCANY, Mid-Island Y, Mosholu-Montefiore, and Hebrew Association of Williamsburg—in addition to Shorefront, UJA, and Jewish Board (collectively, the

"Lowenstein Plaintiffs"), and that the three other remaining Plaintiffs—Hawthorne Residential Treatment, Pleasantville, and JCCA—"are not legal entities capable of filing a lawsuit but rather are alternative names or subdivisions" of certain of the Lowenstein Plaintiffs. *Id.* at 1 n.1, Exh. A. The Lowenstein Plaintiffs insisted that none of them had "consented to the filing of this lawsuit." *Id.* at 2. The Lowenstein Plaintiffs also informed the Court that Lowenstein Sandler had "filed an Amended Complaint in the State Court Action on behalf of twelve [entities] that have [underlying lawsuits filed against them], including the [Lowenstein] Plaintiffs," and that such "Amended Complaint includes all the claims at issue in both this lawsuit and the Hartford Action and dozens more." *Id.* at 8. The Lowenstein Plaintiffs requested a stay so they could pursue their claims in the State Court Action, but declined to seek voluntary dismissal of this case. *Id.* Berkshire Hathaway meanwhile requested a ruling on the pending summary judgment motions. *Id.* at 10-12.

On February 3, 2026, the Court ordered the Lowenstein Plaintiffs to submit a letter "explaining why they should not be bound by the decisions made by [Fishbein]" and addressing "whether they would wish to seek voluntary dismissal of this action in the event that the Court does not grant a stay." Dkt. 162 at 1. The Court also ordered Berkshire Hathaway to advise "whether there are any conditions that would lead [it] to support a voluntary dismissal of this action without prejudice." *Id.* at 2.

On February 11, 2026, the Lowenstein Plaintiffs expressed that they were "willing to proceed with a voluntary dismissal provided that it [be] without prejudice," Dkt. 166 at 1 (emphasis omitted), and subject to the conditions that the Lowenstein Plaintiffs: (1) "serve only one corporate designee deposition notice on [Berkshire Hathaway] and agree to limit that deposition to eight [] hours in the State Court Action"; (2) "seek no additional production of documents from [Berkshire Hathaway] in the State Court Action, other than documents identified by [Berkshire Hathaway]'s

5

corporate designee that were not previously produced"; (3) "propound no further written discovery on [Berkshire Hathaway] in the State Court Action";[3] (4) "agree to produce a reasonable number of corporate designee witnesses . . . to the extent that [Berkshire Hathaway] wishes to pursue such depositions"; and (5) "be entitled to fifteen additional pages of briefing per motion . . . [t]o the extent that the summary judgment motions from this action carry forward into the State Court Action," *id.* 4 (the "Dismissal Conditions").  Also on February 11, 2026, Berkshire Hathaway submitted a letter maintaining that a voluntary dismissal without prejudice would be inappropriate on any conditions.  Dkt. 165.

On February 13, 2026, the Court granted the Lowenstein Plaintiffs leave to move for voluntary dismissal.  Dkt. 168.  On February 25, 2026, Berkshire Hathaway asked the Court to hold the Lowenstein Plaintiffs' anticipated motion "in abeyance in order to allow [Berkshire Hathaway] time to conduct narrow discovery on the limited issue of [the Lowenstein] Plaintiffs' 'consent' argument."  Dkt. 169.  The Court denied Berkshire Hathaway's request on February 26, 2026, Dkt. 170, and on February 27, 2026, the Lowenstein Plaintiffs moved for voluntary dismissal without prejudice subject to the Dismissal Conditions described in their February 11 letter, Dkt. 171 ("Motion").  On March 13, 2026, Berkshire Hathaway opposed voluntary dismissal and, in the alternative, sought an award of attorneys' fees and costs.  Dkt. 172 ("Opposition").

---

[3] The Court understands this third condition to mean that the Lowenstein Plaintiffs will not make any further written discovery demands directed to Berkshire Hathaway in the State Court Action.

## II.  Discussion

### A.    Voluntary Dismissal

#### 1.    Legal Standard

Federal Rule of Civil Procedure 41(a) provides that after an "opposing party serves either an answer or a motion for summary judgment," an action may be dismissed over a defendant's objection "only by court order, on terms that the court considers proper."  In the Second Circuit, "[t]wo lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper."  *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006).  First, such a dismissal "would be improper if the defendant would suffer some plain legal prejudice."  *Id.* (internal quotation marks omitted).  In this context, a "court properly recognizes plain legal prejudice . . . when a cause has proceeded so far that the defendant . . . is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action."  *United States v. Ross*, 161 F.4th 100, 122-23 (2d Cir. 2025) (internal quotation marks omitted); *see also Jones v. SEC,* 298 U.S. 1, 19 (1936) (explaining that "plain legal prejudice" requires more "than the mere prospect of a second litigation upon the subject matter").

In the absence of plain legal prejudice, a second line of authority "indicates that the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors, including (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss."  *Camilli*, 436 F.3d at 123 (citing *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)).  This "multifactor test is not intended

as an exercise in arithmetic," however.  *SEC v. Oakford Corp.*, 181 F.R.D. 269, 273 (S.D.N.Y. 1998).  Although a district court must consider the *Zagano* factors in deciding whether to dismiss without prejudice, that "does not mean that each such concern must be accorded the same weight, or that still other concerns may not in the end be significant." *Id.*

### 2.    Analysis

Berkshire Hathaway does not contend that it will suffer "plain legal prejudice" from the dismissal of this case without prejudice, so the Court applies the *Zagano* factors to determine whether such dismissal is appropriate.

The first *Zagano* factor considers a plaintiff's diligence in moving to voluntarily dismiss. Berkshire Hathaway argues that the Lowenstein Plaintiffs lacked diligence because they waited until "nine months after summary judgment motions were fully briefed and filed" to raise that they did not consent to the filing of this action.  Opposition at 10.  But "[a] better measure of diligence is whether a plaintiff moved to dismiss the complaint without prejudice within a reasonable period of time *after the occurrence of the event* that led to the plaintiff's decision not to pursue the action." *Ascentive, LLC v. Opinion Corp.*, No. 10 Civ. 4433 (ILG), 2012 WL 1569573, at *4 (E.D.N.Y. May 3, 2012) (emphasis added); *see also Shaw Fam. Archives, Ltd. v. CMG Worldwide, Inc.*, No. 05 Civ. 3939 (CM), 2008 WL 4127549, at *6 (S.D.N.Y. Sept. 2, 2008) ("Because [the plaintiff's] motion to dismiss was made shortly after a series of events that have made pursuit of the litigation far more difficult and inefficient, the [plaintiff] acted diligently.").  Viewed in that light, the Lowenstein Plaintiffs were reasonably diligent.   Within two days of Lowenstein Sandler's appearance, Jewish Board filed a letter requesting a stay, and less than three months later, the nine Lowenstein Plaintiffs jointly sought voluntary dismissal.  *Cf. Accurate Grading Quality Assurance, Inc. v. KGK Jewelry, LLC*, No. 12 Civ. 1343 (KPF) (DF), 2014 WL 3302303, at *3

(S.D.N.Y. July 7, 2014) (finding the plaintiffs acted diligently when they "brought [a] motion [to voluntarily dismiss] less than two months after retaining new counsel"); *Jules v. Robertson,* No. 13 Civ. 2228 (PAE), 2013 WL 3963680, at \*2 (S.D.N.Y. Aug. 1, 2013) (same); *Levit v. May Dep't Stores Int'l Inc.,* No. 02 Civ. 6386 (JCF), 2003 WL 1738998, at \*1 (S.D.N.Y. Apr. 2, 2003) (same).

Berkshire Hathaway faults the Lowenstein Plaintiffs for not voicing their issues with Fishbein's representation sooner. *See* Opposition at 11 ("Plaintiffs also fail to explain why their current position could not have been raised sooner."). But it is understandable that the Lowenstein Plaintiffs may not have appreciated the possibility of dismissing this action until after retaining Lowenstein Sandler, which has brought a broader range of claims in the "more comprehensive" State Court Action with the hopes of resolving those claims at once. Dkt. 161 at 12; *see Hinfin Realty Corp. v. Pittston Co.*, 206 F.R.D. 350, 355-56 (E.D.N.Y. 2008) ("[T]he plaintiffs were diligent in bringing their motion to dismiss the action without prejudice because they filed it immediately after the events that led to their decision not to pursue the action at this time."). Thus, the first *Zagano* factor slightly favors dismissal.

The second *Zagano* factor looks to whether the movant was unduly vexatious. "In cases where there is no evidence to suggest that the case was brought to harass the defendant, or that a plaintiff had ill motive, the second *Zagano* factor weighs in favor of granting dismissal." *Ascentive*, 2012 WL 1569573, at \*4 (citation modified). Berkshire Hathaway argues that there is undue vexatiousness here because the instant motion is "an effort to avoid the imminent adjudication of [the summary judgment] motions." Opposition at 11. There is no evidence supporting such conjecture as to the Lowenstein Plaintiffs' motives, but even if true, a desire to avoid an adverse ruling does not necessarily constitute undue vexatiousness. *See Jaskot v. Brown*, 167 F.R.D. 372, 374 (S.D.N.Y. 1996) (granting voluntary dismissal notwithstanding an argument

"that the plaintiff seeks a dismissal in order to avoid an adverse judgment on the summary judgment motion that would have collateral estoppel or res judicata effect in subsequent litigation"). "As a general rule, a litigant should be permitted to discontinue his action upon appropriate terms even where his avowed purpose is to commence a new litigation upon the same issues in a forum allegedly more favorable to his claim." *Louis v. Bache Grp., Inc.*, 92 F.R.D. 459, 460 (S.D.N.Y. 1981) (quoting *Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 15 F.R.D. 14, 18 (S.D.N.Y. 1953)); *see also Oakford Corp.*, 181 F.R.D. at 273 ("[M]ere tactical advantage . . . is not a proper basis on which a Court should determine a Rule 41(a)(2) motion." (collecting cases)). The second *Zagano* factor therefore weighs in favor of dismissal.

The third *Zagano* factor considers the extent to which a suit has progressed. With discovery concluded and summary judgment motions pending, this factor weighs against dismissal. "[T]he advanced state of litigation is not by itself determinative," however, and "dismissals have been granted on the eve of trial and even after trial has commenced." *Banco Cent. de Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 Civ. 9649 (JFK), 2006 WL 3456521, at *5 (S.D.N.Y. Nov. 30, 2006) (citation modified); *see also Louis*, 92 F.R.D. at 461 ("[T]he advanced state of the litigation and the legal and other expenses incurred by themselves do not mandate a denial of plaintiff's motion."). Indeed, courts have dismissed without prejudice cases that were at similar stages as here. *See, e.g.*, *Jaskot*, 167 F.R.D. at 374 (dismissing without prejudice even though the plaintiff's motion "was filed a year and a half after the suit commenced[ and] more than six months after the close of discovery"); *Louis*, 92 F.R.D. at 461 (dismissing without prejudice even though the "motion was made by plaintiff only after full and extensive pre-trial discovery proceedings").

The fourth *Zagano* factor considers the potentially duplicative expense of relitigation. Berkshire Hathaway argues that "[d]ismissal at this stage would force [it] to re-litigate the same

dispute and coverage issues it has already litigated in this case." Opposition at 13. But "the time and expense [Berkshire Hathaway] incurred to gather the facts, file [motions], and conduct discovery will not be wasted" because "the same arguments and facts can be used" in the State Court Action. *Jaskot*, 167 F.R.D. at 374; *see BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 125 (S.D.N.Y. 2000) ("Defendants can use the same preparation and expense they have undertaken in this case in a subsequent action."); *Accurate Grading Quality Assurance*, 2014 WL 3302303, at *4 ("[W]hile there would be some duplicative expense in relitigation, should Plaintiffs reopen this action, the parties could likely 'pick up' where they left off by completing the remaining deposition and proceeding to summary judgment." (collecting cases)).[4] The fourth *Zagano* factor is therefore neutral. *See Guzman v. Hazemag U.S.A., Inc.*, 145 F.R.D. 308, 310 (E.D.N.Y. 1993) (concluding that any "delay that will occur if the action is dismissed and then resumed in state court" is "not sufficient to defeat a 41(a)(2) motion to dismiss").

The fifth and final *Zagano* factor is the adequacy of the plaintiff's explanation for dismissal. The Lowenstein Plaintiffs offer two justifications for voluntary dismissal. First, the Lowenstein Plaintiffs argue that they "did not provide [Fishbein] with consent to bring this action on their behalf" and should be allowed to pursue their claims on their own terms. Motion at 2. Berkshire Hathaway responds that the Lowenstein Plaintiffs have proffered no evidence showing that this lawsuit was initiated or maintained without their consent, Opposition at 5-7, and that the Lowenstein Plaintiffs should be estopped from even asserting such an argument, *id.* at 7-10. But regardless of whether Fishbein was authorized to act on their behalf, the Lowenstein Plaintiffs'

---

[4] As discussed below, any duplicative expense of relitigation is further mitigated by the Lowenstein Plaintiffs' agreement to the Dismissal Conditions, which limit the depositions they may conduct, the discovery they may seek, and the extent of their briefing in the State Court Action.

shift in litigation strategy after retaining new counsel is a minimally adequate explanation for dismissal. *Cf. Catanzano v. Wing,* 277 F.3d 99, 110 (2d Cir. 2001) ("Plaintiffs' explanation, . . . that they wish to avoid preclusive effects of the district court's ruling on this claim, is adequate.").

Second, the Lowenstein Plaintiffs explain that they seek to resolve their claims in the "more comprehensive" State Court Action. Dkt. 161 at 12. Berkshire Hathaway responds that "[a] decision to pursue coverage for additional claims from other insurers under those insurers' policies is not a basis to undo an action ripe for decision." Opposition at 13. But the desire to avoid piecemeal adjudication is an adequate justification for dismissal. *See Jaskot*, 167 F.R.D. at 374 ("[T]he plaintiff's asserted reason for seeking the dismissal of this action, that is, so he can consolidate his claims against this defendant in one action, serves the interests of judicial economy."). To be sure, the pending Hartford Action in this District might result in some degree of piecemeal adjudication of the Lowenstein Plaintiffs' claims regardless of whether this action is dismissed, but Plaintiffs' desire to resolve their claims in as few proceedings as possible is certainly understandable.

Taken together, the *Zagano* factors favor dismissal without prejudice. Although the Lowenstein Plaintiffs' motion was filed at a late stage, and there will be some duplicative work, the Lowenstein Plaintiffs did not act with undue vexatiousness, filed their motion promptly after retaining new counsel, and reasonably seek to consolidate their claims in a single forum selected by their current counsel. And any expense of relitigation will be mitigated by the fact that discovery can be reused in the State Court Action.

The Court's conclusion is reinforced by the Lowenstein Plaintiffs' agreement to the Dismissal Conditions. *See McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985)

(explaining that conditions of voluntary dismissal "are the quid for the quo of allowing the plaintiff to dismiss his suit without being prevented by the doctrine of res judicata from bringing the same suit again"); *Guzman*, 145 F.R.D. at 310 ("Defendants are protected . . . by that portion of Rule 41(a)(2) which provides that in granting a plaintiff's motion for voluntary dismissal, the court may impose such terms and conditions as it deems proper.").  Each of the Dismissal Conditions will limit the expenses of litigation in the State Court Action.  As described above, the Lowenstein Plaintiffs have agreed to limit the depositions they conduct, the discovery they seek, and the extent of their briefing in the State Court Action, *see supra* I, thereby reducing the expense of relitigation. *Cf. Louis*, 92 F.R.D. at 461 ("[T]he advanced state of the litigation and the legal and other expenses incurred . . . are proper factors to be evaluated in the event terms are to be imposed as a condition of granting a motion for voluntary dismissal.").  The Court thus grants the Lowenstein Plaintiffs' motion to voluntarily dismiss without prejudice and subject to the Dismissal Conditions.

**B.    Attorneys' Fees**

The Court next turns to Berkshire Hathaway's request for attorneys' fees and costs if dismissal is granted.  *See* Opposition at 16-17.  A court's "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose." *Peter v. NantKwest, Inc.*, 589 U.S. 23, 28 (2019) (internal quotation marks omitted).  "The American Rule has roots in our common law reaching back to at least the 18th century," *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015), and "[i]n the absence of [an applicable] exception[], . . . has been consistently followed" ever since, *Summit Valley Indus. Inc. v. Loc. 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 721 (1982).  The decision whether to require the payment of attorneys' fees as a condition of voluntary dismissal "lies within the discretion of the district court." *Accurate Grading*

*Quality Assurance*, 2014 WL 3302303, at *4.

The Court declines to require the payment of attorneys' fees as a condition of voluntary dismissal. In the Dismissal Conditions, the Lowenstein Plaintiffs already agree to limit the depositions that they will conduct, the discovery that they will seek, and the extent of their briefing in the State Court Action. The expense of relitigation will be further mitigated because "the parties [can] likely 'pick up' where they left off [here]." *Id.* Requiring the Lowenstein Plaintiffs to pay Berkshire Hathaway's attorneys' fees also would punish the Lowenstein Plaintiffs for seeking to consolidate their claims in a single action—a decision which "serves the interests of judicial economy." *Jaskot*, 167 F.R.D. at 374.

### III.  Conclusion

For the foregoing reasons, the Court grants the Lowenstein Plaintiffs' motion to voluntarily dismiss without prejudice and subject to the Dismissal Conditions. The Court also dismisses without prejudice the claims of the other three Plaintiffs—Hawthorne Residential Treatment, Pleasantville, and JCCA—which the Lowenstein Plaintiffs contend "are not legal entities capable of filing a lawsuit but rather are alternative names or subdivisions." Dkt. 161 at 1 n.1. With all remaining claims dismissed, the Court denies as moot the parties' motions for summary judgment and Fishbein's motion to withdraw as counsel for Plaintiffs. The Clerk of Court is respectfully directed to terminate all pending motions and to close this case.

SO ORDERED.

Dated:  June 8, 2026
New York, New York

JOHN P. CRONAN
United States District Judge

14